OPINION OF THE COURT
Leo F. Hayes, J.
This matter is presently before the court on a motion by the plaintiff to compel the defendant Chris S. Thayer to produce a complete and legible copy of his medical records from CrouseIrving Memorial Hospital for October 15 and 16, 1989, including statements made by the defendant, results of blood tests and medical treatment he received in connection with injuries he sustained in the motor vehicle collision of October 15, 1989. Attorneys for said defendant have cross-moved for a protective order, pursuant to CPLR 3103 (a); 3122 and 4504 (a), against disclosure of defendant’s hospital records. It is the claim of the defendant that these hospital records are protected from disclosure by the statutory physician-patient privilege and that the defendant has not waived that privilege.
The circumstances surrounding this lawsuit are tragic. On October 15, 1989, defendant Thayer, an employee of defendant Oswego Plaza Liquors, attended a wine-tasting (allegedly per instructions from his employer) sponsored by defendant, Service Liquor Distributors of Central New York. He was joined at the wine-tasting by his friend, plaintiffs decedent, Rosemarie Casimiro. During the course of the "tasting” defendant tasted wine, champagne and cognac. Following the wine-tasting Thayer and Casimiro proceeded to the residence of another person present at the tasting, and it is alleged that the three persons opened and sampled three more bottles of wine. Thayer and Casimiro then left this residence in an automobile operated by defendant Thayer, in which the decedent was the only passenger. The vehicle was then involved in a one-car crash to which there are no other witnesses. Ms. Casimiro was trapped in the vehicle and apparently conscious for most of that time. Ultimately, in order to extricate her from the vehicle, her leg had to be amputated, and she later succumbed to her injuries. As this was a one-car accident, and as the only passenger in the vehicle — plaintiffs decedent — was killed, the underlying circumstances surrounding the accident and Mr. Thayer’s own recollection become crucial to understanding the accident and how it occurred.
It is undisputed that Mr. Thayer was injured as a result of the accident; it is undisputed that he received hospital treat *52 ment, and it appears to be undisputed that he was given diagnostic blood alcohol tests. However, at the time of his deposition, Mr. Thayer testified, when questioned about the circumstances of the accident:
"Q. Do you remember anything about the collision?
"A. No.
"Q. Is there some reason?
"A. Amnesia, I guess.
"Q. Are you saying that you have retrograde amnesia as a result of this accident?
"A. As far as my doctor says, yes.”
The defendant, in opposition to the production of medical records, relies primarily on the New York Court of Appeals decision in Dillenbeck v Hess (73 NY2d 278 [1989]). The fact pattern in Dillenbeck is somewhat analogous to that presented here, though there is a key distinction. In Dillenbeck, the plaintiffs decedent was killed, and her son, Michael Dillenbeck, was seriously injured when their vehicle collided head-on with another driven by the defendant Hess. The complaint in Dillenbeck asserted that the defendant’s intoxicated condition was a proximate cause of the accident. Defendant was seriously injured and was hospitalized. Apparently a blood alcohol test was performed at the hospital for diagnostic purposes, but not specifically at the direction of a police officer or pursuant to court order. Plaintiff sought to discover the defendant’s hospital records, and in particular the results of any blood alcohol tests administered to the defendant. The plaintiff in Dillenbeck offered excerpts from defendant’s examination before trial "wherein she claimed to have no memory of the events occurring prior to the accident except that she remembered being at Red’s Good Luck Tavern * * * for a union meeting and having one drink while she was there”. (Dillenbeck v Hess, supra, at 282.) The Court of Appeals held, in part, and over the vigorous dissent of Judge Bellacosa, that "[defendant cannot be said to have waived the privilege simply by denying the allegations in the complaint or by testifying that she cannot remember any details of the accident where the fact of her memory loss is not being advanced to excuse her conduct”. (Dillenbeck v Hess, supra, at 289; see also, Pierson v Dayton, 168 AD2d 173 [4th Dept 1991].)
In this case, the defendant does not merely claim to have forgotten the circumstances of the accident or the conditions immediately prior thereto, but raises an actual medical condi *53 tian as a reason for the memory lapse (to wit: retrograde amnesia). The theory that memory loss is not being advanced to excuse the conduct of the defendant herein is a distinction without difference under the fact scenario as presented to this court. In short, the claim of retrograde amnesia becomes, in all probability, a lethal sword to plaintiff’s claim when the defendant is the only witness to the accident and to many of the circumstances leading up to the accident.
If Dillenbeck (supra) and its progeny are allowed to stand, the rule of thumb in a serious personal injury accident, not all together uncommon with similar fact scenarios, will be that the defendant "has no memory.” The lack of memory by the most effective witness to the case will prevent the deceaseds’ survivors access to defendant’s medical records, in spite of the offer of preliminary proof that alcohol was a factor in the accident and in spite of the "unavailability” of plaintiffs’ decedent, and will effectively shield each such defendant from liability. This court is mindful that the physician-patient privilege is a creature of the Legislature and is considered statutorily waived in numerous circumstances and for a variety of reasons to suit the public good. As another court has noted:
"[W]hile upholding the physician-patient privilege, many commentators have criticized it as an unnecessary impediment to the search for truth and justice. (See, for example, 5 Weinstein-Korn-Miller, NY Civ Prac |J 4504.02; Fisch, New York Evidence § 557 [2d ed].) Additionally, many courts have indicated a similar conclusion. (Williams v Roosevelt Hosp., 66 NY2d 391, 395-396; Koump v Smith, supra, at 293; see also, Dillenbeck v Hess [Bellacosa, J. dissenting], supra.)
"Since there is essentially unanimity in the view that the application of the physician-patient privilege is often used as a sword rather than a shield and impairs the ability of the court to administer justice, it is this court’s view that the privilege ought not to be expanded to factual circumstances such as are here presented.
"To repeat, the underlying rationale for the privilege was to encourage patients to disclose information to their physician freely, without fear of disclosure, so that a proper diagnosis could be made and a course of treatment instituted. Coupled with that basic objective, we have the almost universal view that the application of the privilege ofttimes impedes the road to justice.” (Rodriguez v New York City Tr. Auth., 151 Misc 2d 1027, 1028-1029 [1991].)
*54 This court is also mindful that driving is considered a privilege in the State of New York, not a right. Given the strong public policy against driving under the influence, this court thinks it not only reasonable, but imperative, in factual scenarios such as that presented to the court, and in circumstances in which the plaintiff has come forward with proof of the unavailability of plaintiff’s decedent to testify to the circumstances of the accident, and where the plaintiff has come forward with proof of the use of alcohol prior to the accident by the defendant, that adequate grounds have been presented for the waiver of the physician-patient privilege. It would appear to be an ironic and draconian result, if the blood alcohol results are undiscoverable in the case as presented here, but would have been available had the investigating law enforcement officers ordered the tests.
This court is of the opinion that to strictly apply Dillenbeck (supra) to the facts as presented in this case is to thwart truth and justice. The defendant’s proffering of retrograde amnesia as a rationale for his lack of any explanation as to the underlying circumstances of the accident has the same effect as if the memory loss was being advanced to excuse his conduct, since the memory loss, in all probability, in facts such as presented to this court, will excuse the defendant’s conduct. Under these circumstances, the rights of the defendant must also be balanced with the rights of Ms. Casimiro’s family to insure a fair and just outcome to this tragic accident. Accordingly, it is this court’s determination that the defendant’s medical records, insofar as they relate to blood alcohol content and to the claim of retrograde amnesia, are discoverable, and defendant shall remit to plaintiff the appropriate authorizations to obtain such records.
Subsequent to this motion to compel production of medical records, plaintiff moved to compel production of the no-fault insurance records and workers’ compensation records as they relate to defendant, Chris S. Thayer. The court does not reach the issue of plaintiff’s request for these records, since these requests appear to have been mooted by the court’s determination that plaintiff may have disclosure of relevant medical records.*
*55 Plaintiffs request for production of defendant Thayer’s no-fault insurance records and workers’ compensation records is denied without prejudice.

 Defendant Thayer opposes this disclosure on the grounds that these records are also subject to privilege. This court received only limited workers’ compensation records, and cannot determine the extent to which Thayer pursued his rights in workers’ compensation court. However, the *55 court would note that the law in New York is well established that "[t]he physician-patient privilege, assuming it to apply, is waived when a claim for compensation is not alone filed but is prosecuted by one competent to do so; for the valid prosecution of such a claim necessarily involves the giving of testimony on behalf of the claimant, with respect to the injuries alleged to have been caused by the accident. The privilege is deemed to have been waived as soon as evidence in his behalf is given of the claimant’s injuries”. (Matter of Maryland Cas. Co., 274 App Div 211, 214 [1st Dept 1948].)