OPINION OF THE COURT
Joseph C. Calabrese, J.
Defendant, Charles Davis, is charged with attempted murder in the second degree (counts 1, 3); criminal use of a firearm in the first degree (counts 2, 4); assault in the first degree (counts *27 5, 6); attempted assault in the first degree (count 7); criminal possession of a weapon in the second degree (count 8) and criminal possession of a weapon in the third degree (counts 9, 10).
These charges arise out of a series of events alleged to have occurred on April 12, 1995 and which resulted in James Curtis (Curtis) being shot in the head. At the time of the shooting, Curtis, a detective with the Lynbrook Police Department, had been on administrative leave for some two years while pursuing a claimed job connected disability.
On May 23, 24 and June 12, 1995 the case was presented to the Grand Jury. An indictment charging defendant with the aforestated crimes was handed up on June 13, 1995. Defendant was arraigned on June 20, 1995; entered a plea of "not guilty”; bail was set at $500,000, cash or bond; and defendant was remanded pending the posting of said bail.
Thereafter, defendant moved for various items of pretrial relief, including discovery pursuant to CPL article 240. One of the specific items sought was a copy of a serology report prepared by the Nassau County Medical Examiner’s Office (ME) with regard to the analysis of samples of his blood which the MB’s office had obtained from the South Nassau Community Hospital subsequent to his being shot on April 12, 1995.
The uncontroverted facts indicate the blood samples were taken by hospital personnel at a time when he was unconscious and preparatory to surgery. Although that surgery ultimately proved successful, immediately thereafter it was believed that Curtis would succumb. Recognizing that the presence of blood and/or drugs would dissipate during the postsurgery period that Curtis remained alive, and in anticipation of the need to perform an autopsy if he should die, the ME contacted the hospital and arranged to obtain blood samples. The Nassau County Police took custody of the samples and transported such to the ME.
Thereafter, a toxicological report of Curtis’s blood was prepared. The results of said report, but not the report itself, were ultimately presented to the Grand Jury.
The People have declined to permit defendant to discover this report.
In a decision dated October 5, 1995, this court ordered:
"Second, with respect to the serology reports of the Nassau County Medical Examiners Office, the parties are directed to file Memoranda of Law regarding:
"a. James Curtis right to 'intervene’ and his 'standing’ to assert the physician-patient privilege, insofar as James Curtis, *28 although a victim is not a party to this case and the District Attorney has stated that James Curtis will not testify as a witness for the People.
"b. The People’s standing to assert the physician-patient privilege on behalf of James Curtis, who although a victim is not a party to this case and the District Attorney has stated that James Curtis will not testify as a witness for the People.
"c. Assuming that the physician-patient privilege is properly assertable, whether such privilege exists between James Curtis and the Nassau County Medical Examiner’s Office.
"d. Assuming the physician-patient privilege exists, has James Curtis waived such privilege by permitting testimony regarding the toxicological findings by the Medical Examiner’s Office regarding blood samples taken after his admission to the hospital on April 12, 1995 to be presented to the Grand Jury.
"e. Assuming the physician-patient privilege exists, has the privilege been otherwise waived by James Curtis as the victim since the charges contained in Counts 1,2,3,4,5,6 and 7 place James Curtis physical condition into controversy.
"f. Any other issues the parties deem relevant and wish to raise.
"Pending resolution of the 'intervention’ and 'standing’ issues, the law firm of Axelrod, Cornachio, Famghetti and Davis, attorneys for James Curtis is permitted to appear 'amicus curiae’ in this case.”
Memoranda of law, including an "amicus” brief, have been filed.
On the one hand, Curtis argues:
"Detective James Curtis’ right to intervene in this case, and his standing to assert the physician-patient privilege (CPLR § 4504), is clear despite the fact that as the victim, James Curtis is not a party to this case, nor may he be a witness for the prosecution.
"If the patient whose medical records are in issue is not a party to the proceeding in which disclosure of the particular privileged information is sought, any party may assert the privilege on the patient’s behalf.
"Therefore, the doctors, the hospital, or the People, can execute a valid assertion of that privilege on behalf of Detective James Curtis. The privilege applies to hospital records as well as to the records of private doctors * * *
"A patient is entitled to the protection of the physician-patient privilege even though he may be suspected or accused of criminal activity.
*29 "Any argument by the defense that the blood test results should be released because they may implicate James Curtis in a crime (driving while intoxicated) is irrelevant to the physician-patient privilege and his right to assert the privilege over the results of a diagnostic blood test. (Citations Omitted.)”
Likewise, the People contend:
"These results were presented to the Grand Jury investigating this matter and were subject to the secrecy inherent in that body. Neither James Curtis nor anyone on his behalf consented to the blood samples being obtained, transferred and analyzed by the Medical Examiner’s Office or presented to the Grand Jury.
"The defendant’s attempt in this matter to obtain the results of the toxicological tests performed on Curtis’ blood sample requires that Curtis or his representative be allowed to intervene [CPLR 4505] provides that only the patient may waive the privilege. Since the statute was obviously designed, to protect the interests of the patient alone, he would clearly have standing to assert the privilege so the court can make a reasoned decision whether it applies and, if so, whether the information should be disclosed nevertheless * * *
"Once Curtis is allowed to assert the privilege, the prosecution has no position on the issue since it will be adequately raised by the people directly involved: the patient, Curtis, and defendant Charles Davis.
"Also, since the statute requires that the privilege can only be waived by the patient, the fact that the sample transferred from the hospital to the Medical Examiner’s office would be irrelevant to the continued validity of the privilege. Neither the hospital personnel nor those at the Medical Examiner’s office would be legally entitled to waive the privilege for the patient. Moreover, Curtis could not be deemed to have waived the privilege since he never permitted or requested the toxicological findings to be obtained by the Medical Examiner’s office or presented to the Grand Jury.”
Finally, defendant argues that regardless of whether the detective puts Curtis’ physical condition into issue, the serology reports must be disclosed because it contains exculpatory information, within the meaning of Brady v Maryland (373 US 83), "of sufficient significance to result in the denial of the defendant’s right to a fair trial if not made available to defendant herein. The fact that charges in the indictment put Mr. Curtis’ physical condition into issue simply underscores that *30 fact that the serology reports are, indeed, Brady material, and, as such must be disclosed and made available to defendant herein. This required disclosure, effective[ly] waives, or renders irrelevant, any physician-patient privilege which might exist.”
CPL 60.10 makes the physician-patient privilege as defined in CPLR 4504 applicable to criminal proceedings.
In enacting CPLR 4504, the Legislature created a statutory shield which generally precludes what would otherwise be admissible evidence of confidential communications between a patient and his doctor. Ostensibly, the purpose of the enactment was to encourage an unfettered exchange of information between the patient and the doctor which would result in better medical treatment (Dillenbeck v Hess, 73 NY2d 278). The privilege is assertable by the patient, the physician or any other party to the action, but personal to the patient alone with regards to its waiver (Prink v Rockefeller Ctr., 48 NY2d 309). Generally, once it is established that the sought after information is within the purview of CPLR 4504, only the patient or an authorized representative may waive such and permit disclosure (Dillenbeck v Hess, supra).
This privilege has been extended to Grand Jury proceedings and criminal investigations and may be asserted by a defendant to prevent disclosure of his own medical records even though it impedes such investigation (People v Petro, 122 AD2d 309, Iv denied 68 NY2d 772; Matter of Grand Jury Subpoena Duces Tecum [Y., M. D., P. C.] v Kuriansky, 69 NY2d 232; Matter of Grand Jury Investigation, 59 NY2d 130). However, a defendant has been held incapable of asserting the privilege on behalf of the victim (supra). This "pragmatic limitation” results from the clear realization that "a person or entity subject to proceedings for having committed crimes against an individual should not be permitted to assert the victim’s physician-patient privilege as a ban to production of relevant medical records or testimony * * * the purpose of the privilege is to protect the patient, not to shield the criminal” (Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352-353).
In the instant case, this court is asked for the first time to determine the converse of the aforestated legal principle, to wit, whether a victim or his legal guardian may interpose the physician-patient privilege to preclude a defendant from obtaining medical information which directly bears on whether or not defendant was justified in undertaking the conduct from which these pending criminal charges flow. Otherwise stated, can a victim use his privilege to prevent a defendant from *31 obtaining exculpatory evidence within the meaning of Brady v Maryland (373 US 83, supra).
Brady (supra, at 88) requires the People turn over to a defendant evidence in their possession which would "tend to exculpate him or reduce the penalty” in furtherance of defendant’s Sixth and Fourteenth Amendment rights of confrontation and due process (US Const 6th, 14th Amends; NY Const, art I, § 6).
In this regard, the ostensible purpose underlying the claiming of this privilege has become little more than a stratagem to create an "impediment to the search for truth” and "is often used as a sword rather than a shield [which] impairs the ability of the court to administer justice” (Rodriguez v New York City Tr. Auth., 151 Misc 2d 1027, 1028-1029; Casimiro v Thayer, 163 Misc 2d 50, 53). Indeed, misuse of the privilege has resulted in the following commentary:
"If the purpose of the privilege is to judicially protect the physician’s ethical canon of secrecy, it is ineffective, since in the usual situation, the privilege is used to conceal facts known to everyone connected with the patient, and which are a secret to no one but the opponent * * *
"Actually, the privilege is utilized as a tactical maneuver, and is seldom invoked for any purpose other than to suppress facts that are injurious to the legal position of the person who seeks its protection. Rarely is it used to guard a secret * * *
"Elimination of the privilege, or at the very least a rule permitting the court to require disclosure when necessary for the proper administration of justice, would permit equitable results without decimating the law or placing it on a Procrustean bed.” (Fisch, New York Evidence § 557, at 376-378 [2d ed].)
Here, the proper administration of justice dictates the result without stretching the law or cutting off a defendant’s rights. It is well established that policy interests underlining a statutory privilege must yield where the defendant’s constitutional rights of confrontation and due process outweigh the need for confidentiality (Davis v Alaska, 415 US 308; People v Reidout, 140 Misc 2d 632; People v Lowe, 96 Misc 2d 33; see, People v Gissendanner, 48 NY2d 543; Pennsylvania v Ritchie, 480 US 39).
Initially, it is noted that the People, on behalf of Curtis, could have interposed his privilege before the Grand Jury. They chose not to do so but instead presented the exculpatory materials as requested by defendant. This can only be inter *32 preted by this court as an analysis by the People at that time that even were Curtis to claim this privilege it must yield to defendant’s constitutional rights.
The court is in full agreement with such analysis. The material contained is the MB’s report, as testified to before the Grand Jury, is clearly exculpatory evidence within the penumbra of Brady (supra) and the statutory privilege must yield to defendant’s constitutional rights. As such, Curtis need not be permitted to intervene for the purpose of claiming the privilege, since it must yield to defendant’s rights as a matter of law.
Accordingly, the People are directed to forthwith provide defendant with a copy of the MB’s serology report. In addition, the People shall forthwith provide defendant with a copy of the Grand Jury testimony given by T.J.M., M.D. on June 12, 1995, as this testimony regarding the serology report is also Brady material which defendant has a right to now discover.
The People are reminded of their continuing obligation pursuant to Brady v Maryland (supra) and are, accordingly, directed to forthwith provide defendant with all materials in their possession which "tends to exculpate [defendant] or reduce the penalty”, including all such testimony given before the Grand Jury. This includes any and all testimony indicating any aggressive conduct by Curtis towards defendant, and any and all testimony indicating that the firing of the weapon may have been accidental.
The court notes that the People’s claim that the serology report would not be relevant since they do not intend to call Curtis as a trial witness is misplaced. The defendant may seek to call him as a witness. The ultimate admissibility of the serology report at trial is not now and should not now be determined. Such future determination does not, in any event, control a defendant’s current discovery rights.