[No. 38271-3-I.    Division One.    January 27, 1997.]

THE STATE OF WASHINGTON, *Petitioner,* v. WILBUR
LAMAR SMITH, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Brenda L. Bannon, Deputy,* for petitioner.

*Allen M. Ressler* and *Browne & Ressler,* for respondent.

ELLINGTON, J. — The question we must resolve on discretionary review is whether evidence of blood alcohol is admissible in this prosecution for vehicular assault where the blood sample was taken at a hospital for purposes of treatment, rather than by police following an arrest. We hold the evidence is admissible.

## Facts

Lamar Smith drank beer and whiskey with Chris Warren and Mike Frier at two different bars, then crashed his Oldsmobile Bravada into a utility pole. As a result of the accident, Frier is paralyzed. At the scene of the accident, Smith was unsteady, staggering, and smelled of alcohol. His speech was slurred and his eyes were bloodshot and watery. He later testified he had "blacked out" and was "dazed." He told the first police officer on the scene that he was the driver and the accident was all his fault.

Some witnesses to the accident thought that Warren had been the driver because Smith had exited by the passenger door.[1] When Smith learned that some officers thought Warren had been driving, Smith changed his story and gave a written statement to that effect. Warren was arrested and charged with vehicular assault. Smith was taken to Overlake Hospital and treated for his injuries.

Later, however, the police became convinced that Smith was the driver. The charges against Warren were dropped and Smith was arrested. Prosecutors then attempted to seize his medical records and a blood sample taken by the

---

[1]Police later discovered that the driver's side door would not open.

hospital. Smith claimed the evidence was protected by the physician-patient privilege, and the trial court agreed.

The court ruled that police had probable cause to arrest Smith when the accident occurred, and could have seized a blood sample under the implied consent statute, but the State could not now violate Smith's privilege to remedy its error. The court rejected the argument that public policy outweighed the defendant's privilege. Therefore, the court denied the State's motion to compel production of Smith's blood sample[2] and medical records, but indicated the ruling was subject to reconsideration if Smith waived the privilege or placed his medical condition at issue. The court held, though, that Smith would not waive the privilege simply by examining the State's witnesses about his injuries or state of sobriety.

At trial, Smith testified he drank two beers and nursed a third beer at the Sharks tavern. At TGI Fridays, he was served three drinks made with Crown Royal whiskey, but testified they were ordered for him by someone else, and because he did not like them, he only sipped them. Smith denied that the accident occurred because he had too much to drink. In closing, Smith's counsel talked about the evidence of how much Smith had to drink, and made detailed hypothetical calculations of his probable blood alcohol level depending on the quantity of alcohol he had consumed. The jury was unable to reach a verdict, and the court declared a mistrial.

The State filed a motion for discretionary review, arguing that its ability to effectively prosecute Smith for vehicular assault was substantially limited by the trial court's refusal to order Smith to produce his medical records and the blood sample. The State also argued the trial court erred in concluding Smith had not opened the door to cross-examination about the medical records and blood, and in concluding that Smith did not waive the physician-patient privilege.

---

[2]The blood sample was ordered seized and preserved, and is apparently still subject to accurate analysis as to Smith's blood alcohol content on the night of the accident.

Smith filed a cross-motion for discretionary review regarding the trial court's reckless driving instruction. We granted the State's motion, denied Smith's, and asked the parties to address "whether RCW 46.20.308(3) [the implied consent statute] entitled the State access to Smith's blood draw once he was arrested for this offense as well as the interaction of that statute with RCW 5.60.060(4) [the physician-patient privilege] and whether Smith's defense and/or testimony waived the physician-patient privilege."

The Implied Consent Statute Does Not Control

The State argues that the implied consent statute (RCW 46.20.308) and the physician-patient privilege (RCW 5.60.060(4)) are in conflict in this case, and that the implied consent statute supersedes the privilege. Smith argues that the implied consent statute simply does not apply, so the court need not construe it or balance the interests of the two statutes.

The implied consent statute deems drivers to have consented to a blood or breath test if, at the time of arrest, the arresting officer reasonably believes the person was driving while intoxicated:

> (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, *at the time of the arrest*, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. [Emphasis added.]

RCW 46.20.308(1). If there are reasonable grounds to administer a breath or blood test, it is to be administered at the direction of an officer after the driver has been informed of his right to refuse the test. RCW 46.20.308(2). If, however, the driver has been arrested for vehicular homicide or vehicular assault, a blood or breath test may be administered even if the driver has refused consent:

(3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested.

RCW 46.20.308(3). Smith agrees that if police had arrested him for vehicular assault at the time of the accident, they could have used the authority of the implied consent statute to seize and test a blood sample. But, he claims, the implied consent statute does not authorize the State to seize and test blood taken by a physician when the defendant was not under arrest. The State argues that because there was probable cause to arrest Smith, the intent of the statute dictates that the State should have access to the blood sample.

■ No Washington appellate court has previously considered the issue, but we agree with Smith that the implied consent statute is not controlling. Nothing in the statute allows the State to seize and test blood taken by a physician when the defendant was not under arrest.

Courts in other jurisdictions applying similar statutes agree that implied consent statutes do not control the admissibility of blood alcohol evidence taken by a physician when the defendant was not under arrest. *State v. Vandergrift*, 535 N.W.2d 428, 430 (S.D. 1995); *State v. Cribb*, 310 S.C. 518, 426 S.E.2d 306, 308 (1992); *State v. Waring*, 779 S.W.2d 736, 740-41 (Mo. 1989); *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427, 432-33 (1987); *State v. Pitchford*, 10 Kan. App. 2d 293, 295, 697 P.2d 896 (1985); *Nelson v. State*, 650 P.2d 426, 427 (Alaska 1982); *State v. Baker*, 184 Neb. 724, 171 N.W.2d 798, 800 (1969).

■ As courts in other jurisdictions have also concluded, however, such evidence may be seized in accordance with general search and seizure law, and may be admitted at trial. *Cribb*, 426 S.E.2d at 308, n.2; *Waring*, 779 S.W.2d at 740-41; *Zielke*, 403 N.W.2d at 432-33 (1987); *Pollard v. State*, 439 N.E.2d 177, 183 (Ind. 1982); *see also Vandergrift*, 535 N.W.2d at 429-30.

In *Zielke*, Wisconsin's implied consent statute, like Washington's, did not explicitly require suppression when a blood sample was taken for medical purposes before the defendant was under arrest. To determine whether the sample was nevertheless admissible, the court presumed the Legislature intended an interpretation that advanced the purpose of the statute, which was to remove drunk drivers from the road. *Zielke*, 403 N.W.2d at 430. The implied consent law was designed to facilitate, not impede, the gathering of chemical evidence to prosecute drunk drivers. *Zielke*, 403 N.W.2d at 430. It was not designed to give greater fourth amendment rights to an alleged drunk driver than those afforded other criminal defendants. *Zielke*, 403 N.W.2d at 432. Therefore, the court concluded the statute did not prevent the court from admitting evidence obtained by alternative constitutional means. *Zielke* 403 N.W.2d at 432, *citing Schmerber v. California*, 384 U.S. 757, 766-72, 86 S. Ct. 1826, 1833-36, 16 L. Ed. 2d 908 (1966) (the warrantless seizure of a blood sample is constitutional under the fourth amendment if probable cause and exigent circumstances exist). "Suppressing the constitutionally obtained evidence in this case would frustrate the objectives of the law, lead to absurd results, and serve no legitimate purpose." *Zielke*, 403 N.W.2d at 428.

■ We agree with the *Zielke* court's analysis. Absence of authorizing language in a statute does not convert it into a rule of exclusion. While the implied consent statute does not authorize seizure or admission of Smith's blood sample, neither does the statute prevent its seizure or admission on other grounds. Here there was both probable

cause and relevance. The failure of police to realize the true facts, arrest Smith, and avail themselves of the implied consent statute to obtain a blood sample should not and does not operate to enlarge Smith's fourth amendment rights and provide him a shield against disclosure of evidence that would otherwise be available to the State. Thus, Smith's blood sample, or the results of any blood alcohol test, should have been admitted unless, as Smith argues, they were protected by the physician-patient privilege.

### The Physician-Patient Privilege Does Not Apply To Smith's Blood Sample

■ The physician-patient privilege prevents a physician from testifying in a civil action about information the physician acquired when treating the patient, unless the patient consents. RCW 5.60.060(4). The privilege is a procedural safeguard, not a rule of substantive or constitutional law. *Carson v. Fine*, 123 Wn.2d 206, 212, 867 P.2d 610 (1994). As a creature of statute in derogation of common law, it is strictly construed and limited to its purposes, which are "to promote proper treatment by facilitating full disclosure of information[,]" and to protect the patient from embarrassment or scandal that might result if the intimate details of medical treatment were revealed. *Carson*, 123 Wn.2d at 213.

■ Unlike all other privileges created by the statute, the Legislature did not apply the physician-patient privilege to criminal cases. Washington courts have extended the privilege to criminal actions, but "only 'so far as practicable.'" *State v. Mark*, 23 Wn. App. 392, 396-97, 597 P.2d 406 (1979), (quoting RCW 10.58.010 ("The rules of evidence in civil actions, so far as practicable, shall be applied to criminal prosecutions.")) Therefore, in a criminal case, "[a]pplication of the privilege requires a balancing of the benefits of the privilege against the public interest of full revelation of the facts." *State v. Stark*, 66 Wn. App. 423, 438, 832 P.2d 109 (1992). The public's interest here is

well articulated by the implied consent statute, for while the statute does not control, neither is it irrelevant; the statute expresses the legislative determination that the public has a significant interest in the full revelation of facts surrounding the alcohol consumption of those who drive.

The privilege's purpose of encouraging full disclosure for proper medical treatment will not be promoted here because, in cases such as this, although a patient might resist treatment if he knew his blood alcohol content would be disclosed, the patient ordinarily would be under arrest and would have no right to refuse to have his blood tested or to keep the results confidential.

Nor will maintaining confidentiality protect Smith from scandal or embarrassment. Any scandal or embarrassment related to his sobriety has likely already occurred from the fact of the charge against him. *See State v. Boehme*, 71 Wn.2d 621, 637, 430 P.2d 527 (1967), *cert. denied*, 390 U.S. 1013, 88 S. Ct. 1259, 20 L. Ed. 2d 164 (1968) Furthermore, a blood test does not constitute an undue imposition on an individual's personal privacy. *In re Juveniles A, B, C, D, E*, 121 Wn.2d 80, 92, 847 P.2d 455 (1993). The benefits of applying the privilege to the blood sample, therefore, are minimal.

In contrast, the public's interest in the full revelation of the facts in this case is high. The implied consent statute evinces the intent of the Legislature to "insure swift and certain punishment for those who drink and drive[,]"[3] and the police had probable cause to believe that Smith had been drinking and driving. The public, therefore, has a strong interest in determining whether Smith was intoxicated. Moreover, given that Smith deliberately added to the confusion about who was driving, it would be unconscionable to allow him to benefit from his deception. Had he been forthright at the time of the accident, the State would have administered its own blood test.

---

[3]RCW 46.20.308 (1996) note (Legislative finding, intent—1983 c 165).

The public's interest outweighs the benefits of the privilege. We hold the privilege does not apply to the blood sample taken by the hospital, nor to any report of its alcohol content. The State should have been permitted to test the sample for the presence of intoxicants, and the results of those tests should have been admitted.

### Smith Waived His Right To Assert The Physician-Patient Privilege

■ While we have held the privilege does not apply to the blood sample, or to the results of tests of that sample for intoxicants, we must address whether other medical records are privileged. The State claims that Smith waived his physician-patient privilege when he testified he drank relatively little, his driving was not impaired by alcohol, and described his injuries. Smith claims that denying the State's allegations does not put his medical records at issue, and argues that he did not testify about his treatment or injuries, so his medical records remain privileged. We agree that Smith waived the privilege.

Smith is correct that mere denial of the charges in a drunk driving prosecution does not put the defendant's medical records at issue. *State v. Roper*, 122 N.M. 126, 921 P.2d 322, 326 (1996); *State v. Elwell*, 132 N.H. 599, 567 A.2d 1002, 1007 (1989); *see also Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307, 315 (1977); *Carlton v. Superior Court*, 261 Cal. App. 2d 282, 67 Cal. Rptr. 568, 573 (1968). But Smith testified about specifics regarding his consumption, whether he was intoxicated, and his mental state and injuries. A defendant who testifies at trial and denies he was driving under the influence may waive the privilege. *Roper*, 921 P.2d at 326-27; *see also Casimiro v. Thayer*, 163 Misc. 2d 50, 619 N.Y.S.2d 493, 495 (1994), *aff'd as modified*, 217 A.D.2d 951, 629 N.Y.S.2d 897 (1995); *State v. Doughty*, 554 A.2d 1189, 1191 (Me. 1989); *People v. Deadmond*, 683 P.2d 763, 771 (Colo. 1984); *but see Dillenbeck v. Hess*, 73 N.Y.2d 278, 536 N.E.2d 1126, 1133, 539 N.Y.S.2d 707 (1989) (defendant does not waive privilege by testifying she can-

not remember the details of an accident when she is not claiming amnesia as a defense).

In *McVay v. State*,[4] the privilege was held waived when the defendant testified he smelled like beer because he spilled one. In *Shultz v. State*,[5] the privilege was deemed waived when the defendant testified he did not feel intoxicated, although he drank a quart of beer and some cough syrup with alcohol and codeine. The *Shultz* court quoted Wigmore's comment on the absurdity of applying the privilege in a civil case when the plaintiff has testified about the facts that are the subject of the privilege:

> Certainly it is a spectacle fit to increase the layman's traditional contempt for the chicanery of the law, when a plaintiff describes at length to the jury and a crowded court room the details of his supposed ailment and then meekly suppresses the available proof of his falsities by wielding a weapon nominally termed a privilege.

*Shultz*, 417 N.E.2d 1135, *(quoting* 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2389 at 833-34 (McNaughton rev. 1961); Similarly, it would be absurd to allow Smith to testify at length about his sobriety, then suppress the evidence that could prove his testimony false, particularly when his testimony was completely voluntary. *See Shultz*, 417 N.E.2d at 1134.

Smith did not waive the privilege merely by pleading not guilty. But when he voluntarily testified about how many drinks he had and the injuries he received, and affirmatively denied that he was impaired by alcohol when the accident occurred, he waived his privilege to conceal the records that could disprove his claims that he was not intoxicated.

Smith asserts that because the State does not allege the blood was tested for its alcohol content or that Smith was otherwise tested for intoxication, his medical records

---

[4]312 Ark. 73, 847 S.W.2d 28, 31 (1993).

[5]417 N.E.2d 1127, 1134- 35 (Ind. 1981).

remain privileged. We note that in the absence of disclosure of his records, such an allegation would be guesswork at best. In any event, the blood sample is evidence of his blood alcohol content and can still be tested. The fact that it may not yet have been tested does not affect the privilege analysis as to the records; in camera review will reveal whether the records contain relevant material.

■ Smith finally claims that, whatever the effect of his testimony in the first trial, the issue of waiver cannot be decided by this court as to the pending second trial. Smith is incorrect. The privilege, once waived for purposes of a first trial, cannot be regained on retrial:

> A waiver at a former trial should bar a claim of the privilege at a later trial, for the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only.

8 WIGMORE § 2389(4), at 860-61; *see also Commonwealth v. Santiago,* 541 Pa. 188, 662 A.2d 610, 614-15 (1995); *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180, 1194-95, *cert. denied,* 469 U.S. 1040, 105 S. Ct. 521, 83 L. Ed. 2d 409 (1984).

## Conclusion

The blood sample and the results of any tests revealing intoxicants in the blood are not privileged and are admissible. On retrial, the judge should conduct an in camera review to determine if any of Smith's other medical records are relevant.[6] Smith has waived the privilege in regard to any information in the records related to his sobriety and injuries.

The decision of the trial court suppressing Smith's blood sample and medical records is reversed. We remand to the trial court for further proceedings consistent with this opinion.

---

[6]We reach no conclusion as to what, if any, relevance there may be to the records, other than those bearing on sobriety.

KENNEDY, A.C.J., and GROSSE, J., concur.

Reconsideration denied April 8, 1997.

Review denied at 133 Wn.2d 1005 (1997).