ISHEE, J.,
for the Court.
¶ 1. Jamieson Yul Magee was indicted on March 17, 2003, by a two count indictment for the transfer of a controlled substance, pursuant to Mississippi Code Annotated section 41—29—139(a)(1) (Supp.2003). Ma-gee was sentenced to serve fifteen years for each count, with both sentences to run consecutively, all in the custody of the Mississippi Department of Corrections (MDOC). He asserts the following issues for this Court’s review:
I. Whether the trial court erred by not granting either a new trial or a judgment notwithstanding the verdict.
II. Whether the verdict was against the overwhelming weight of the evidence.
III. Whether the trial court erred in failing to sustain a motion to quash the venire.
IV. Whether the trial court erred in sentencing the defendant as a habitual offender in light of the constitutional prohibition against cruel and unusual punishment.
Finding no error, we affirm.
FACTS
¶ 2. Jamieson Yul Magee was indicted on March 17, 2003, by a Hancock County grand jury on two counts of transfer of a controlled substance. On October 8, 2003, the jury returned a guilty verdict on both counts and he was sentenced to serve fifteen years for each count. Magee made a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial on December 17, 2003. The court denied this motion on October 19, 2004.
¶ 3. Magee was arrested for the transfer of a controlled substance. Peggy Vaughn, the confidential informant used in the matter, contacted the Mississippi Bureau of Narcotics and informed the Bureau that she could purchase controlled substances from Magee. Magee was caught selling crack cocaine to Vaughn on two different occasions. Agent Sean Buchannon of the Bureau was in charge of setting up the transaction. He was responsible for securing the funds for the transaction and for coordinating other specifics that went along with the sale. The sales took place *591 on September 10, 2002, and September 13, 2002.
¶ 4. In this particular case Vaughn was to buy crack cocaine from Magee. Vaughn made a phone call to Magee in an effort to set up the deal. The call was made from a cell phone that had been provided by the Bay-Waveland Narcotics Task Force. Phone records indicate that the call was made to a phone that was registered to Magee. Vaughn also used a vehicle that had been provided by the task force. Agent Buchannon testified the confidential informant was searched for illegal contraband prior to the transaction. The search did not produce any illegal contraband. The State of Mississippi issued $700 worth of “buy money” to Vaughn so she would be able to consummate the transaction. Additionally, she was given a body transmitter and also a microcassette recorder which allowed agents to hear her conversation with Magee. The transactions were recorded on audio and videotape.
¶ 5. The deals were to take place at a residence at the intersection of Bookter Street and Watts Street. Magee instructed Vaughn to come to Smiley’s house to purchase the crack cocaine. Vaughn went to Smiley’s house and purchased the crack cocaine. After she left the house, she met with Agent Buchannon and gave him the crack cocaine she had purchased and issued a statement to him. Agent Buchan-non then secured the videotapes and audiotapes that were used during the sale. An almost identical series of events transpired for the sale that took place on September 13, 2002.
¶ 6. Magee testified that he was in Jean-erette, Louisiana at the time the sales took place. The defense called witnesses to testify to this alibi. Magee argued that the video footage of the transaction was insufficient to convict him and that the testimony of the confidential informant, Vaughn, should not be believed. He argues that Vaughn’s testimony should not be believed because she is a convicted felon and has admitted to being a user of illegal drugs. He also argues that the trial court erred in failing to sustain his motion to quash the venire and that the trial court was in error when it sentenced him as a habitual offender. Aggrieved, Magee appeals.
ISSUES AND ANALYSIS
I. Whether the trial court erred by not granting either a new trial or a judgment notwithstanding the verdict.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 7. Due to their similarity, we will discuss these two issues together. The standard of review for these two issues is deferential to the trial court. The appellate court must accept as true all evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Swann v. State, 806 So.2d 1111, 1117(¶ 25) (Miss.2002). Somewhat similarly, the court may reverse a denial of a judgment notwithstanding the verdict only when the evidence, considered in the light most favorable to the prosecution, is such that “reasonable and fair-minded jurors could only find the accused not guilty.” Franklin v. State, 676 So.2d 287, 288 (Miss.1996) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). On review, the State is given “the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). The appellate court should not reverse a guilty verdict unless failure to do so would sanction an unconscionable injustice. Hilliard v. *592 State, 749 So.2d 1015, 1016-17(¶ 10) (Miss.1999). “This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280(¶ 14) (Miss.Ct.App.2001).
¶ 8. The State’s evidence indicated that Magee sold crack cocaine to a confidential informant. The Bureau of Narcotics has video and audiotape of the transaction and both suggest that a transfer took place. The informant testified as an eyewitness to the transaction and identified Magee as the seller. Magee alleges that he was in Jeanerette, Louisiana at the time the transaction took place and that he did not make the sale of crack to the confidential informant. Which version of the events to believe was a question of fact that was resolved by the jury. In challenging the sufficiency of the evidence, the issue is whether the evidence, taken in the light most favorable to the state, shows “beyond a reasonable doubt that accused committed the act charged and that he did so under such circumstances that every element of the offense existed.” Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The evidence presented was sufficient to deny Magee’s motion for a judgment notwithstanding the verdict. Therefore, this issue is without merit.
¶ 9. “As distinguished from a motion for a directed verdict or a judgment notwithstanding the verdict, a motion for a new trial asks to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence.” Purnell v. State, 878 So.2d 124, 129(¶ 18) (Miss.Ct.App.2004) (citing Smith v. State, 802 So.2d 82, 85-86(¶ 11) (Miss.2001)). It is a fundamental principle of law that a jury verdict will not be disturbed except in the most extreme of situations. Washington v. State, 800 So.2d 1140, 1144(¶ 10) (Miss.2001) (citing Manning v. State, 735 So.2d 323, 333(¶ 10) (Miss.1999)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.” Walker v. State, 881 So.2d 820, 831(¶32) (Miss.2004) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)).
¶ 10. Magee challenges the trial court’s denial of his motion for a new trial, arguing that the verdict was contrary to the overwhelming weight of the evidence. After reviewing the evidence presented by the State in support of Magee’s conviction, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. We find that the facts and reasonable inferences drawn from those facts strongly point toward Magee’s guilt. Any discrepancies in the testimony were issues for the jury to decide. Thus, this issue is without merit.
III. Whether the trial court erred in failing to sustain a motion to quash the venire.
¶ 11. Magee argues that the jury chosen failed to represent his African-American racial heritage. He states that the trial court erred in failing to quash the venire panel because less than three percent of the members of the panel were minorities. He asserts that this is error because seven percent of Hancock County’s population is African-American.
¶ 12. Mississippi Code Annotated section 13-5-2 (Rev.2006) states:
It is the policy of this state that all persons selected for jury service be selected at random from a fair cross sec *593 tion of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.
Magee did not present any evidence that would suggest that the jury was not selected at random nor does the record reflect such. The trial court found that the venire was selected at random by a computer program and further found that there was not any evidence present that would show that this system had been manipulated.
¶ 13. Magee directs our attention to the United States Supreme Court eases of Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In Taylor, the Supreme Court held that the Sixth Amendment right to a trial by an impartial jury of the state and district where the crime has been committed requires that the jury be drawn from a fair cross section of the community. Taylor, 419 U.S. at 531, 95 S.Ct. 692. In Duren, the court promulgated a three-part test for establishing a pri-ma facie case. The defendant must show: (1) that the group alleged to have been excluded must be a distinctive group within the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this under representation is due to systematic exclusion of the group in the jury selection process. Duren, 439 U.S. at 364, 99 S.Ct. 664.
¶ 14. After reading Magee’s brief and examining the record we are of the opinion that the Duren test has not been met. It is true that African-Americans are a distinct part of the community; however, nothing suggests that the representation of this group is not fair and reasonable to the number of such persons in the community. Furthermore, Mason presented no evidence, and admitted to having no such evidence, of a systematic exclusion of African-Americans in the jury selection process. Thus, this issue is without merit.
IY. Whether the trial court erred in sentencing the defendant as a habitual offender in light of the constitutional prohibition against cruel and unusual punishment.
¶ 15. We must first note that Ma-gee was sentenced within the statutory guidelines. Additionally, after reviewing the record, Magee’s argument at trial was that he was punished more severely for going to trial and not accepting his plea offer and not that the court violated his rights against cruel and unusual punishment. Because Magee did not initially raise this issue in the trial court, he may not raise it for the first time in this Court. This Court may not consider issues not raised in the trial court. Robinson v. State, 875 So.2d 230, 240(¶ 31) (Miss.Ct.App.2004). Therefore, this issue is procedurally barred.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION OF TWO COUNTS OF TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCE OF FIFTEEN YEARS FOR EACH COUNT TO RUN CONSECUTIVELY WITH EACH OTHER FOR A TOTAL OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*594 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.